UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| WALTER J. HIMMELREICH, | ) | JUDGE JAMES S. GWIN |
|  | ) |  |
|  | ) | CASE NO. 4:08CV1306 |
| Petitioner, | ) |  |
|  | ) |  |
| -vs- | ) |  |
|  | ) |  |
| J. T. SHARTLE, et al., | ) | MEMORANDUM OF OPINION |
|  | ) | AND ORDER |
|  | ) |  |
| Respondents. | ) |  |

Pro se petitioner Walter J. Himmelreich, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio ("F.C.I. Elkton"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this court on May 29, 2008.[1] He brings this action against the warden at F.C.I. Elkton, J.T. Shartle, and the Bureau of Prisons (BOP). Claiming his rights to due

---

[1] Petitioner filed a Motion for Preliminary Injunction and to Create a Class Action [Doc. # 3] on the same date he filed his petition. Considering the instant dismissal of this petition, both requests are moot.

process and equal protection were violated by respondents, Mr. Himmelreich seeks an order expunging his Incident Report and all sanctions imposed against him in violation of the Sixth, Eighth and Fourteenth Amendments of the Constitution.

*Background*

Mr. Himmelreich's locker was subjected to a random search by F.C.I. Elkton staff on August 23, 2007. A small plastic container of fruit salad was discovered in the petitioner's locker by a corrections officer during the course of the search. The container was taken to the office for testing using a Alco-Sensor III ("a breathalyzer machine"). The fruit mix tested positive for alcohol on two separate occasions. Mr. Himmelreich complains that the manufacturer of the Alco-Sensor III, Intoximeters, Inc., would attest under oath that the instrument is not designed to "measure alcohol levels in a non-homogeneous solution." (Pet. at ¶ 10.) Petitioner states that the fruit salad mix of solids and liquids qualifies as a non-homogeneous solution and, thus, is not suitable to test for alcohol with an Alco-Sensor III.

On the same day the fruit salad was tested, Mr. Himmelreich was directed to report to the Lieutenant's office for questioning. Upon his arrival in the office, petitioner was asked whether he was keeping the fruit salad to make alcohol, how long it had been fermenting and whether sugar had been added to the contents. Petitioner was tested using the Alco-Sensor III device and he passed.

An Administrative Detention order was issued and Mr. Himmelreich was placed in the Special Housing Unit (SHU) to await a disciplinary hearing. One day after the incident,

Lieutenant Hosea delivered a "corrected incident report" to petitioner at 6:00 pm.² Petititioner complains that his Sixth Amendment right to a speedy trial and due process were violated because a Unit Disciplinary Committee (UDC) Hearing should have been held within three days of receiving his original incident report, or no later than August 28, 2007 at 8:45 pm. Instead, on August 29, 2007, three business days after receiving the corrected report, petitioner received an "Extension of UDC Hearing" notice. The stated reason for the request was that the "Lieutenant's Office [was] awaiting a rewrite on the incident report." (Pet. at ¶ 18.) The UDC Hearing was held the same date the petitioner was advised of the extension.

During the hearing, Mr. Garland were permitted as a party to the UDC hearing. Mr. Himmelreich argues that this was improper to include Mr. Garland because he was not a member of his unit team. In spite of his efforts to explain that he believed this was a violation of his rights under the Due Process Clause, petitioner complains Mr. Garland repeatedly advised him to "shut up."

A Disciplinary Hearing was conducted on September 17, 2007. Petitioner complains that, in contravention of 28 C.F.R. § 541.17(a), he was not provided 24 hours notice of the charges before the hearing. Suggesting a hardship, Mr. Himmelreich states he was held in "the SHU (otherwise known as the jail within the jail)" from the date of the incident until the hearing. (Pet. at ¶ 27.) He complains that waiting 19 days from the date of his UDC for his disciplinary hearing violates his "liberty interests."

At some point during the disciplinary hearing, the Disciplinary Hearing Officer

---

²Petitioner does not disclose when he received the original report, but since he claims the corrected copy was "virtually the same as the original incident report," there is no dispute that he received his original incident report before 6:00 pm August 24, 2007.

(DHO) allegedly admitted that the "testing method used by the BOP . . . does not give the most consistently reliable results." (Pet. at ¶ 24.) Moreover, his last question to petitioner was what crime had he committed that resulted in the sentence he was serving at F.C.I. Elkton. Mr. Himmelreich claims that the question was not only improper, but his staff representative failed to object to it as such.

The DHO ultimately determined petitioner committed prohibited acts.[3] Mr. Himmelreich states he was sanctioned with the loss of 27 days good time ("maximum time"), placed in disciplinary segregation for 30 days ("the maximum"), and suffered the loss of six months of commissary privileges "(which ended on March 15, 2008)." (Pet. at ¶34.)

"Immediately after the DHO hearing" (Pet. At ¶ 33), Mr. Himmelreich wrote a letter to the warden setting forth his complaint that his constitutional rights were violated during the hearing and stating his belief that his detention between the dates of the UDC and DHO hearings was sufficient punishment.[4] Without addressing the timeliness of his attempt to exhaust his administrative remedies, Mr. Himmelreich complains that his Regional Remedy Appeal was filed on December 24, 2007. For reasons left unexplained to this court, the appeal was "rejected" on January 2, 2008. He then sent a "cover letter" in response to this rejection on January 9, 2008. Another Rejection Notice was sent to petitioner, including a notation that "disagreement with the Rejection Notice was appealable to the Central Office."(Pet. at ¶ 48.) He claims he sent an appeal

---

[3]No copy of the incident report was filed with Mr. Himmelreich's petition.

[4]There appears to be a discrepancy with regard to exactly when Mr. Himmelreich complained to the warden. On page 10 of his petition he states that he sent an in response to an Inmate Request form sent by the petitioner to the Warden in November of 2007, Captain Fitzgerald obtained a copy of the DHO report for the petitioner on December 4, 2007, so that the petition could begin the appeals process." (Pet. at ¶44.)

to the Central Office on January 25, 2008, but it was returned and he was advised that it should have been sent to the Regional Office. Frustrated, Mr. Himmelreich concludes that his efforts to exhaust his administrative remedies are futile. He adds that he "indicated on his Central Office Appeal that any Rejection would be considered grounds for filing with the court." (Pet. at ¶ 52.)

The balance of Mr. Himmelreich's petition includes claims of harassment (i.e. being awoken in the middle of the night for random alcohol testing) and limitations on his access to the law library during the time he was in SHU, as well as from the date of the incident until his disciplinary confinement ended on October 15, 2007. Finally, "due to the unprofessionalism [sic] of several correctional personnel, the petitioner has suffered harassment, personal and financial damages, become a hate crime victim, as-well-as the sanctions invoked by the DHO, during his SHU incarceration."(Pet. at ¶ 57.)

## *28 U.S.C. § 2241*

Prisoners seeking to challenge the execution or manner in which their sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir.1977). Here, petitioner is in the custody of Warden J. T. Shartle at F.C.I. Elkton and seeks the expungement of an incident report and the restoration of GCT to his sentence. Thus he has properly asserted his claims under § 2241.

A federal prisoner must first exhaust his available remedies before filing a § 2241 petition for habeas corpus relief. Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981) (per curiam). Here, Mr. Himmelreich argues that it is futile to exhaust his remedies under the

circumstances. The court reviewed the record and the law concerning the habeas statute's exhaustion requirement, and declines to address the propriety of petitioner's claim of futility inasmuch as his claims are easily disposed of on the merits. Therefore, in the interest of judicial economy, the court will not discuss the exhaustion issue further and will proceed directly to the merits of Mr. Himmelreich's arguments. See Boddie v. New York State Div. of Parole, 285 F.Supp.2d 421, 428 (S.D.N.Y.2003) ("[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit.")

*Due Process*

The court construes Mr. Himmelreich's due process claim to be that he was denied procedural due process. The due process required by the U.S. Constitution for prisoners facing disciplinary action has been delineated by the Supreme Court of the United States in a few well-known opinions which guide this court. The Court has explained that when a prisoner is faced with the loss of good-conduct time or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," only then is he entitled to certain due process protections. Sandin v. Conner, 515 U.S. 472, 484 (1995).

The requirements of due process are satisfied if "there was some evidence from which the conclusion of the administrative tribunal could be deduced....".  United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S.103, 106 (1927).  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.  Moreover, the revocation of good time credits is not comparable to a criminal conviction, Wolff v. McDonnell, 418 U.S. 539, 556(1974), and neither the amount of

6

evidence necessary to support such a conviction, see Jackson v. Virginia, 443 U.S. 307 (1979), nor any other standard greater than "some evidence" applies in this context. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 456 (1985).  Therefore, prisoners facing a loss of good-time credits must be given (1) advance written notice of the disciplinary charges, (2) an opportunity to present witness testimony and other evidence when such allowance is consistent with safety and correctional goals, and (3) a written statement of reasons for the disciplinary action taken. Id. at 454.

    Mr. Himmelreich does not disclose benefit what prohibited act he committed, what the DHO concluded or provide a copy of the incident report.  On its face, the petition fails to allege the denial of a right to due process. Clearly, he received advance written notice that of the charges filed against him.  He was not denied the right to call witnesses and, while he complains he had to request a signed copy of the DHO's decision, there is no dispute that he received a copy of the DHO's decision.

    Ascertaining whether the "some evidence" standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  The Sixth Circuit has indicated that "[n]ot much evidence is required to support the action of a prison disciplinary board." Williams v. Bass, 63 F.3d 483, 486 (6th Cir.1995). Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See Wolff, 418 U.S. at 556; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (8th Cir. 1974). While the court does not have the benefit of the incident report or the DHO's final determination, there is no allegation that the DHO did anything other than weigh the evidence provided and find

that a prohibited act was committed as charged. Again, it is not the role of the court to weigh the credibility of the evidence under scrutiny. Even if Mr. Himmelreich does not agree with these findings, there is some evidence that he was in possession of a container that tested positive for alcohol. Because the DHO's decision is supported by "some evidence" in the record, Mr. Himmelreich's due process rights were not violated.

With respect to the petitioner's contention that his placement in the SHU between the UDC and DHO hearings was punitive and should have qualified as sufficient punishment, the Sixth Circuit has repeatedly held that placement in administrative segregation does not constitute an atypical and significant hardship on the inmate. See Jones v. Baker, 155 F.3d 810, 811 (6th Cir.1998); Mackey v. Dyke, 111 F.3d 460, 463 (6th Cir.1997); Rimmer-Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir.1995); see also Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir.1992) (quoting Hudson v. Palmer, 468 U.S. 517, 523 (1984))(prisoners retain "'those rights [that are] not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration.'") Thus, petitioner's placement in SHO, the failure of prison staff to treat him in a "professional manner" or any incidents wherein he was subject to random drug testing do not carry significant due process implications in light of the exigencies existing in the prison environment. See Superintendent, 472 U.S. at 454.

Mr. Himmelreich's concerns regarding the fact that his UDC hearing should have been held three days after he received the original incident report fail to implicate any constitutional violation. First, the petitioner does not demonstrate how he was prejudiced by a one day delay. More important, the prison staff provided an explanation for the delay in their notification, which the court does not find unreasonable. Relevant case law requires a showing of 'prejudice' resulting

from delay. See Mazzanti v. Bogan, 866 F. Supp. 1029, 1034 (E.D.Mich. 1994)(habeas relief not warranted where petitioner failed to showdelay actually prejudiced him). Petitioner has not shown any prejudice resulting from the alleged delays in delivering his incident report to him, or in completing the investigative report. The alleged delays, therefore, do not warrant habeas corpus relief. See Northington v. U.S. Parole Commission, 587 F.2d 2, 3-4 (6th Cir.1978); Donn v. Baer, 828 F.2d 487, 490 (8th Cir.1987).

Based on the foregoing, the petition is dismissed pursuant to 28 U.S.C. § 2243. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: June 18, 2008                                *s/    James S. Gwin*
                                                    JAMES S. GWIN
                                                    UNITED STATES DISTRICT JUDGE